IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE F. MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-1521 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Mark R. Hornak |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

### I. Introduction

Plaintiff Connie F. Mosley ("Mosley") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 13. For the reasons that follow, the motion for summary judgment filed by the Commissioner (*ECF No. 13*) will be denied, and the motion for summary judgment filed by Mosley (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further proceedings. The Commissioner's decision will be vacated, and the case will be remanded to him for further consideration of Mosley's applications for benefits.

1

## II. <u>Procedural History</u>

Mosley applied for DIB and SSI benefits on January 15, 2008, alleging that she had become "disabled" on July 31, 2007.[1] R. at 149, 154. Pennsylvania's Bureau of Disability Determination denied the applications on August 12, 2008. R. at 80, 85. Mosley responded on September 5, 2008, by filing a timely request for an administrative hearing. R. at 90-91. On August 20, 2009, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") James J. Pileggi. R. at 25. Mosley, who was represented by counsel, appeared and testified at the hearing. R. at 32-56. Mary Beth Kopar ("Kopar"), an impartial vocational expert, also testified at the hearing. R. at 56-60. In a decision dated November 17, 2009, the ALJ determined that Mosley was not "disabled" within the meaning of the Act. R. at 9-19.

On January 15, 2010, Mosley sought administrative review of the ALJ's decision by filing a timely request for review with the Appeals Council. R. at 6-8. The Appeals Council denied the request for review on October 18, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Mosley commenced this action on November 29, 2011, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 3. Mosley and the Commissioner filed motions for summary judgment on March 9, 2012, and March 13, 2012, respectively. ECF Nos. 10 & 13. These motions are the subject of this memorandum opinion.

## III. <u>Standard of Review</u>

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision

---

[1] In his decision, Administrative Law Judge ("ALJ") James J. Pileggi referred to July 30, 2007, as Mosley's protective filing date and alleged onset date. R. at 12. It is not clear whether the references to that date were typographical errors, or whether Mosley protectively filed her applications before January 15, 2008. R. at 149, 154.

is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

3

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

IV. **The ALJ's Decision**

In his decision, the ALJ determined that Mosley had not engaged in substantial gainful activity subsequent to her alleged onset date. R. at 14. Mosely was found to be suffering from a back impairment, plantar fasciitis, and a history of breast cancer. R. at 14. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 14; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Mosley's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 15.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Mosley's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) provided that the work does not require operation of foot controls; requires no crawling, kneeling, climbing or balancing on heights; and does not require the claimant to engage in bending at the waist to 90 degrees.

R. at 15. Mosley had "past relevant work"[3] experience as a bartender, cashier, cook and machine operator. R. at 57. Kopar testified that, according to the Dictionary of Occupational Titles, these jobs were typically performed at the "light"[4] level of exertion. R. at 57. Since Mosley was found to be capable of engaging in only a limited range of "sedentary"[5] work activities, it was determined that she could not return to her past relevant work. R. at 17.

Mosley was born on May 20, 1963, making her forty-four years old on her alleged onset date and forty-six years old on the date of the ALJ's decision.[6] R. at 17, 32. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c),

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[6] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

416.963(c). She had the equivalent of a high school education and an ability to communicate in English.[7] R. at 32, 171, 178; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Mosley could work as a cellular telephone quotation clerk, an order clerk, or a document preparer. R. at 18. Kopar's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[8] R. at 57.

## V.   Discussion

In 2003, Mosley underwent a bilateral mastectomy after learning that she had cancer in her right breast. R. at 571. Her right breast was removed because of the cancer, and her left breast was removed for prophylactic reasons. R. at 571. Due to the debilitating effects of her breast cancer and concomitant medical treatment, Mosley was awarded DIB and SSI benefits for the period of time commencing on July 28, 2003, and ending on February 15, 2005. R. at 63-71. At the hearing, Mosley testified that her breast cancer was in remission. R. at 36. She went on to state that her back impairment was her primary reason for filing new applications for DIB and SSI benefits. R. at 36.

A magnetic resonance imaging ("MRI") scan performed on July 21, 2008, revealed that Mosley had "disc protrusions" and "multilevel spondylosis" in her lumbar spine. R. at 382-383. During the relevant period of time, Mosley experienced pain in her lower back "with painful paresthesias radiating to both lower extremities." R. at 510. She underwent an electromyography study on September 26, 2008. R. at 510. The study uncovered "no evidence

---

[7] Mosley received her General Educational Development ("GED") certification in 1993. R. at 32, 178.
[8] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

of neuropathy, radiculopathy or myopathy." R. at 510. An x-ray of Mosley's lumbar spine conducted on November 5, 2008, revealed that she was suffering from moderate degenerative joint disease. R. at 522. On November 18, 2008, a bone scan was performed to evaluate the reasons for Mosley's back pain. R. at 523. The bone scan produced findings "consistent with degenerative change in [Mosley's] bony skeleton." R. at 523. A subsequent bone scan conducted on August 12, 2009, revealed that Mosley had arthropathy in her spine, shoulders, hips, knees and feet. R. at 599.

Since her alleged onset date, Mosley has worked as a cashier and pharmacy technician on a part-time basis. R. at 32-33. As a cashier, she typically worked between twenty and twenty-five hours per week. R. at 33. At the time of the hearing, Mosley was still working anywhere from eighteen to twenty-five hours per week as a pharmacy technician. R. at 33. The ALJ concluded that the work performed by Mosley on or after July 31, 2007, had not constituted substantial gainful activity. R. at 14. Mosley testified that Susan Ruediter ("Ruediter"), a licensed pharmacist, was her immediate supervisor. R. at 49. The record contains a handwritten statement from Ruediter detailing the ways in which she had accommodated Mosley's back condition. R. at 299. Mosley was apparently permitted to lie down in her car three to four times per shift, for fifteen minutes at a time, in order to alleviate her back pain. R. at 49, 229. She was allowed to periodically lean over the pharmacy counter in order to stretch her back, and to rest her head on a table while sitting. R. at 50, 229. Her duties did not include the lifting or carrying of objects weighing more than a bottle of pills. R. at 51, 229. Mosley was only required to work between four and five hours per day. R. at 50, 229.

The accommodations provided by Ruediter made it possible for Mosley to continue working as a pharmacy technician despite the limitations caused by her back impairment. The

standard of "disability" applicable under Titles II and XVI of the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). For this reason, the ALJ was not entitled to consider the ways in which Mosley's impairments could be accommodated in determining whether jobs existed in the national economy that she could perform on a full-time basis. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007). Kopar testified that no jobs existed for an individual who needed to "absent herself from the workplace on an irregular or random basis three or more times per month." R. at 58. The ALJ concluded that while Mosley could not engage in light work activities without the accommodations provided by Ruediter, she did not need similar accommodations to perform the sedentary work activities falling within his residual functional capacity assessment. R. at 16.

Mosley spoke with her primary care physician, Dr. Allen Budek, about her applications for DIB and SSI benefits. R. at 333. Dr. Budek noted on December 13, 2007, that assessments from Mosley's treating specialists would be needed. R. at 333. On April 15, 2008, Dr. Edgardo R. Lob reported that Mosley's breast cancer did not limit her ability to engage in work-related activities.[9] R. at 336-337.

Dr. Shubhada Sawardekar performed a consultative physical examination of Mosley on July 15, 2008. R. at 368-374. Although Dr. Sawardekar indicated that Mosley could perform the lifting and carrying duties associated with light work, she found Mosley's standing, walking and sitting abilities to be significantly limited. R. at 373. Dr. Sawardekar reported that Mosley could stand or walk for only three to four hours, and sit for only two-and-a-half hours, during the

---

[9] The Court assumes that Dr. Lob was Mosley's treating oncologist. R. at 334-338.

9

course of an eight-hour workday. R. at 373. Mosley was deemed to be capable of engaging in only occasional bending, kneeling, stooping and crouching. R. at 374.

Dr. Paul Fox, a non-examining medical consultant, opined on July 31, 2008, that Mosley was physically capable of engaging in a range of light work activities involving only occasional climbing and crawling. R. at 484-490. Dr. Budek referred Mosley to Amber Bates ("Bates"), an occupational therapist, for a functional capacity evaluation. R. at 520. The evaluation was performed on October 30, 2008. R. at 520. Bates reported that Mosley had successfully performed tasks required of individuals working at the light level of exertion. R. at 521. In the portion of her written report summarizing the findings of the evaluation, Bates stated as follows:

> Today's functional capacity evaluation indicated inconsistent levels of physical effort and inconsistent levels of reliability of patient reports. In describing such findings, this evaluator is by no means implying intent. Ms. Mosley may be able to do more physically than what was demonstrated. Due to variable levels of reliability with subjective reports, more emphasis should be placed on objective findings. Any final vocational or rehabilitation goal for this patient should be made with this in mind.

R. at 521. Aside from the lifting and carrying limitations incorporated within the definition of light work, the limitations referenced by Bates related primarily to Mosley's inability to engage in squatting, kneeling or overhead reaching during the evaluation. R. at 521. The evaluation findings suggested that Mosley could sit "constantly" and stand "frequently." R. at 521.

During the relevant period of time, Dr. Stuart Anderson was Mosley's treating orthopedic specialist. R. at 221. On November 20, 2008, Dr. Anderson indicated that Mosley's impairments had rendered her incapable of performing sedentary work. R. at 528. He reported that Mosley could stand or walk for only one hour per workday, and that she could not sit for a

total of six hours throughout the course of an eight-hour shift.[10] R. at 529-530. Mosley's pushing and pulling abilities were deemed to be limited. R. at 530. Dr. Anderson further asserted that Mosley could never bend, kneel, stoop, crouch, balance or climb. R. at 530.

Mosley testified that she needed to use a cane in order to get out of bed. R. at 36. She stated that her back pain was typically exacerbated by prolonged sitting or standing. R. at 37. When asked specific questions about her limitations, Mosley asserted that she could sit for only thirty to forty-five minutes at a time, and that she could stand for only fifteen minutes before feeling the need to sit down again. R. at 38-39. The ALJ's residual functional capacity assessment did not include a restriction permitting Mosley to sit or stand at her option. R. at 15. Nonetheless, Kopar responded affirmatively when asked whether the jobs identified in her testimony could be performed "with a sit/stand option." R. at 57.

Seizing on Bates' recommendation that Mosley's abilities and limitations be derived from "objective findings," the ALJ purported to accord "great weight" to Dr. Anderson's assessment to the extent that it was "supported by objective medical evidence." R. at 17. The ALJ did not explain his reasons for rejecting the portions of Dr. Anderson's assessment relating to Mosley's sitting, standing and walking limitations. R. at 17, 529-530. Moreover, Dr. Sawardekar's examination findings were not discussed in the ALJ's decision. R. at 14-18.

Although an administrative law judge must resolve evidentiary conflicts, he or she is not free to "reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Cotter*, 642 F.2d at 706. An administrative decision denying a claimant's

---

[10] Although Dr. Anderson indicated that Mosley could not sit for six hours per workday, he did not clearly explain how many hours Mosley could sit during the course of an eight-hour shift. He placed a "T" in a space reserved for the number of hours that Mosley could spend sitting throughout the course of a standard workday. R. at 530. At the hearing, Mosley's counsel told the ALJ that he had spoken to Dr. Anderson about the ambiguity, and that Dr. Anderson had verbally stated that Mosley could sit for only one hour per workday. R. at 61. In any event, Dr. Anderson clearly reported that Mosley could not sit, stand or walk for a total of eight hours on a typical workday. R. at 529-530.

11

application for benefits must be sufficiently thorough to facilitate meaningful judicial review of the factual findings upon which that decision is based. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000). When medical personnel express different opinions about a claimant's work-related abilities and limitations, the administrative law judge must explain his or her reasons for crediting the medical opinion of one healthcare professional over that of another. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003). A remand for further proceedings is necessary when such an explanation is not provided. *Fargnoli*, 247 F.3d at 41-44.

The ALJ was not required to discuss pieces of evidence that were clearly lacking in probative value. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008). Mosley testified that her breast cancer was in remission. R. at 36. Dr. Lob confirmed that the prior limitations resulting from Mosley's breast cancer were no longer present when she filed the instant applications for benefits. R. at 336-337. Consequently, the ALJ was not required to exhaustively discuss Mosley's breast impairment.

The evidence relating to Mosley's back impairment, however, was clearly pertinent to the issues in this case. *Johnson*, 529 F.3d at 203-205. Mosley testified that her back impairment was her primary reason for seeking benefits. R. at 36. Dr. Anderson and Dr. Sawardekar both identified sitting, standing and walking restrictions that, if credited, would have rendered Mosley incapable of maintaining a full-time job. R. at 373, 529-530. Mosley's counsel stressed the importance of these assessments during his closing argument at the hearing. R. at 60-61. The ALJ never explained why he found the opinions expressed by Dr. Anderson and Dr. Sawardekar to be lacking in credibility. R. at 17. Because the ALJ failed to explain his reasons for discounting dispositive limitations identified by both Mosley's treating orthopedic specialist and

the SSA's own consultative examiner, his decision is not supported by substantial evidence. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-506 (3d Cir. 2009).

The remaining question is whether an award of benefits is justified, or whether the proper remedy is a remand for further consideration of Mosley's claims. An immediate award of benefits is appropriate only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). The conflicting evidence contained in the existing record counsels in favor of a remand for further administrative proceedings.

A claimant's ability to work on a part-time basis may be indicative of an ability to perform the duties of a full-time job. 20 C.F.R. §§ 404.1571, 416.971. Dr. Budek suggested that a functional capacity evaluation was necessary to determine whether Mosley was disabled. R. at 333. The results of Bates' evaluation were consistent with a finding that Mosley could work at the light level of exertion, provided that she did not have to engage in squatting, kneeling or overhead reaching. R. at 521. Dr. Fox deemed Mosley to be capable of performing the duties of a light job involving only occasional climbing or crawling. R. at 484-490. This evidence must be weighed against the opinions provided by Dr. Anderson and Dr. Sawardekar, the statement supplied by Ruediter, and the testimony given by Mosley. The opinions of disability rendered by Dr. Anderson and Dr. Sawardekar do not inevitably bind the Commissioner on the issue of Mosley's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 1 (3d Cir. 2011). Mosley's testimony concerning her functional limitations is not entitled to unqualified acceptance. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011). Every assessment of Mosley's abilities and limitations must be carefully considered, and no

medical opinion received into evidence may be ignored. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992).

Mosley must be afforded "an opportunity to be heard" during the course of the upcoming administrative proceedings. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). The Court expresses no opinion as to whether Mosley is "disabled" within the meaning of the Act. Nevertheless, there are a few things that the Commissioner must keep in mind. Since the record contains objective evidence of an impairment that could reasonably be expected to cause pain, Mosley's subjective complaints of disabling pain are entitled to *serious* consideration. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Bates' observation that "more emphasis should be placed on objective findings" provides the Commissioner with no basis for ignoring Mosley's testimony. R. at 521. Indeed, Bates specifically stated that she did not mean to imply that Mosley had an "intent" to overstate her limitations. R. at 520-521. Mosley's productive work history is a factor that must be considered in determining the credibility of her subjective complaints. *Taybron v. Harris*, 667 F.2d 412, 415, n. 6 (3d Cir. 1981). Her willingness to work as a pharmacy technician despite the limitations caused by her impairments cannot be disregarded. Furthermore, special accommodations extending beyond those typically permitted by employers in the national economy cannot play a role in the Commissioner's analysis. *Poulos*, 474 F.3d at 95.

## VI. Conclusion

Because the ALJ never explained his decision to exclude the disabling limitations identified by Dr. Anderson and Dr. Sawardekar from his residual functional capacity assessment, the Court has no way of knowing "whether he considered and rejected them, considered and discounted them, or failed to consider them at all." *Fargnoli*, 247 F.3d at 44. An administrative

decision which fails to resolve conflicts in the medical evidence cannot be lawfully sustained. *Reefer*, 326 F.3d at 381-382. Accordingly, the Commissioner's motion for summary judgment (*ECF No. 13*) will be denied. Mosley's motion for summary judgment (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The "final decision" of the Commissioner will be vacated, and the case will be remanded to him for further consideration of Mosley's applications for DIB and SSI benefits.

                                                               Mark R. Hornak
                                                              United States District Judge

cc:     All counsel of record